In the Matter of Albert E.
ALLARD, Debtor.

No. 82–72242.

United States District Court,
E. D. Michigan, S. D.

Sept. 2, 1982.

Jonathan Green, Detroit, Mich., for trustee.

## OPINION

GUY, District Judge.

This case is before the court on appeal from the Bankruptcy Court. Paul Borock was appointed trustee of the Allard estate in 1981. Pursuant to 11 U.S.C. § 327(a), he filed an application for entry of an order authorizing him to retain counsel. Mr. Borock chose as counsel an attorney who was simultaneously chosen to act as counsel in numerous other bankruptcy cases. The Bankruptcy Court denied the trustee's petition for counsel and entered an *ex parte* order directing the trustee to retain counsel selected by the court.

In response, the trustee filed a motion for reconsideration. Following oral argument on May 28, 1982, the Bankruptcy Court denied the trustee's motion. As indicated in its memorandum opinion, the Bankruptcy Court concluded that court appointed counsel was necessary to break up the so-called "bankruptcy ring". *See, In Re Allard,* 20 B.R. 902, 9 B.C.D. 298 (Bkrtcy.E.D.Mich. 1982). However meritorious the goal of preventing a small number of attorneys from making up the bankruptcy bar may be, the court concludes, for the reasons stated below, that the Bankruptcy Court abused its discretion in requiring the trustee to retain counsel selected by the court and that the order authorizing the trustee to appoint counsel must be set aside.

At the outset, the court would note that allowing a bankruptcy judge to appoint counsel for a trustee is contrary to one of the primary goals of the 1978 Bankruptcy Act. That goal, the insulation of bankruptcy judges from trustees and the attorneys of the trustees during the administrative stages of a bankruptcy proceeding, was explained by Harold Marsh, Chairman of the Commission on the Bankruptcy Laws of the United States, as follows:

As the result of the nature of the system itself, there exists a relationship between the bankruptcy judges, the trustees and the counsel for the trustees which many people, including many involved in the system, consider unhealthy from the point of view of proper judicial and governmental administration. The judges by and large appoint the trustees and thereby in effect select the counsel. They do not generally appoint persons who are total strangers to them, and it would be entirely unrealistic to expect that they would or should. These same trustees and lawyers then deal on a day to day basis with the judge regarding the routine conduct of the proceeding, and finally these same trustees and lawyers appear before the judge as litigants and counsel when a controversy arises.

*Hearings on H.R. 31 and 32 Before the Subcomm. on Civ. and Const. Rights of the House Comm. on the Judiciary,* 94th Cong., 1st and 2nd Sess., pt. 1, 538 (1976). By appointing counsel for the trustee, the Bankruptcy Court has engaged in the very activities that Commissioner Marsh described as unhealthy.

Nevertheless, the Bankruptcy Court's involvement in the administrative stages of the bankruptcy proceedings is not determinative of the present appeal. The appearance of impropriety created by a bankruptcy judge having to rule on the validity of solutions to problems arising at the administrative stages that he may have suggested is not the only goal of the 1978 Bankruptcy Act at issue here. Another goal of the Act was to check the emergence of a separate and isolated bankruptcy bar. As stated by Commissioner Marsh:

> As a result of the conditions discussed above ... there grew up over the years an isolation of the bankruptcy bench and bar from the mainstream of American jurisprudence and from the judiciary and the legal fraternity generally. Persons practicing in the bankruptcy field tended to confine their activities exclusively to that area, and the Bankruptcy Court, of course, did so from necessity. Therefore, a relatively small group of lawyers controlled the bankruptcy field. Those not within this group tended to regard them with suspicion and distress. I believe that in the last ten years there may be some evidence that this "separate but unequal" status of the bankruptcy lawyers is being eliminated to some extent; but when the bar associations discuss one of their favorite new subjects, that of "specialization" the first thing that everyone agrees upon is that bankruptcy can be labeled a "specialty", although thereafter consensus immediately disappears. There is no real reason for this other than a historical one.

*Hearings on H.R. 31 and 32 Before the Subcomm. on Civ. and Const. Rights of the House Comm. on the Judiciary,* 94th Cong., 1st and 2nd Sess., pt. 1, 538 (1976). By appointing counsel for the trustee, the Bankruptcy Court did attempt to avoid the creation of an isolated bankruptcy bar in this district.

While this latter observation apparently supports the actions of the Bankruptcy Court in appointing counsel, the court makes this observation primarily to demonstrate what the court perceives as the fundamental error underlying the Bankruptcy Court's order. That error is the unnecessary intrusion of the judiciary into an area properly left to the legislature. Regardless of where the proper balance between the need to separate the administrative and judicial roles of a bankruptcy judge and the need to check the emergence of an isolated bankruptcy bar may lie, that balance must be struck by a legislature after a careful review of all the relevant policy considerations and not by the courts on a case-by-case basis. Given the uncertain fate of the Congressionally created United States Trustees pilot programs, *see* 11 U.S.C. § 1501–151326, the court concludes that the Bankruptcy Court abused its discretion in attempting to formulate a judicial solution to the problem those programs were designed to resolve.

Moreover, the court believes that the cases relied on by the Bankruptcy Court also require its order to be set aside. In support of the proposition that a trustee may sometimes be denied the privilege of selecting his own counsel, the Bankruptcy Court cited *In Re Mandell,* 69 F.2d 830 (2nd Cir. 1934); *Kanter v. Robertson,* 102 F.2d 92 (4th Cir. 1939); and *In Re Christ's Church of the Golden Rule,* 157 F.2d 910 (9th Cir. 1946). The language of *Mandell,* however, states that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel." *Mandell, supra,* 69 F.2d at 831. Further, the *Mandell* court held that it was an abuse of judicial discretion to deny the trustee's choice of counsel and not allow him to nominate another attorney satisfactory to both the trustee and the court. Given that the trustee was not allowed to nominate another attorney satisfactory to both the trustee and the court, the order of the Bankruptcy Court must be set aside.